**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

DUNCAN A. GEMMELL,

                              Plaintiff,

              v.                                          No. 8:14-CV-357

CAROLYN W. COLVIN,
Commissioner of Social Security,

                              Defendant.

_____

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**APPEARANCES:**                          **OF COUNSEL:**

Office of Mark A. Schneider               MARK A. SCHNEIDER, ESQ.
57 Court Street
Plattsburgh, New York 12901
Attorneys for Plaintiff

Social Security Administration            FERGUS J. KAISER, ESQ.
Office of Regional General Counsel
Region II
26 Federal Plaza - Room 3904
New York, New York 10278
Attorneys for Defendant

## MEMORANDUM-DECISION AND ORDER

        Plaintiff Duncan A. Gemmell ("Gemmell") brings this action pursuant to 42 U.S.C. §

405(g) seeking review of a decision by the Commissioner of Social Security

("Commissioner") denying his application for disability insurance benefits ("DIB") under the

Social Security Act ("Act").   Gemmell moves for a finding of disability, and the

Commissioner cross moves for a judgment on the pleadings.  Dkt. Nos. 10, 11.  For the

following reasons, this matter is remanded.

## I.  Background

### A.  Procedural History

Gemmell, born on June 18, 1967, applied for DIB on August 30, 2010, alleging a disability onset date of August 3, 2009.  T. 65.[1]  That application was denied on January 24, 2012.  Id. at 66-71.  Gemmell requested a hearing before an administrative law judge ("ALJ"), and a hearing was held on February 4, 2013.  Id. at 74-75, 85-105.  In a decision dated March 18, 2013, ALJ Dale Black-Pennington held that Gemmell was not entitled to disability benefits.  Id. at 15-29.  Gemmell filed a timely request for review, and on March 5, 2014, after reviewing additional evidence, the Appeals Council denied Gemmell's request,[2] making the ALJ's findings the final decision of the Commissioner.  Id. at 1-7.  This action followed.

### B.  Facts

---

[1]  "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  See Dkt. No. 8.

[2]  Gemmell submitted additional evidence to the Appeals Council, which found that the additional evidence did not provide a basis for overturning the ALJ's determination.  T. 1-2, 6 (Medical Records from Moriah Health Center dated December 6, 2011 through December 17, 2013).  The Appeals Council also reviewed medical records from Porter ENT & Audiology, dated March 26, 2013 through August 29, 2013, and Pulmonary Associates of CVPH Medical Center, dated April 22, 2013 through January 23, 2014.  Id. at 2.  However, because the ALJ issued her decision on March 18, 2013, the additional records from Porter ENT and Pulmonary Associates of CVPH Medical Center do not affect the ALJ's decision, because they concern a time period later than March 18, 2013.  Id.  As such, the Appeals Council advised Gemmell to submit a new application for DIB if he wanted a determination as to whether he was disabled after March 18, 2013.  Id.  As such, the Court will only review the medical records that predated the ALJ's decision because, "[a]lthough the new evidence submitted to the Appeals Council forms part of the administrative record under review, it does so only to the extent that it related to the time frame encompassed in the ALJ's decision."  Baladi v. Barnhart, 33 F. App'x 562, 564 (2d Cir. 2002) (citing Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996)).

## 1. Plaintiff's Testimony[3]

Gemmell testified that he last worked as a dairy farmer from 2008 to sometime in 2009.  T. 45.  He also did farm labor from 1997 until 2009.  Id.  Gemmell stated that he ceased working on the dairy farm in 2009 because the chemicals and dust in the air at the farm caused him to have difficulty breathing.  Id.  He lost his job at the dairy farm during the time that he was hospitalized for lung surgery.  Id.  Gemmell has not looked for other work since then because "[d]airy farm[ing] is all [he] know[s] how to do."  Id.  He does not participate in any volunteer work.  Id. at 46.

Gemmell stated that his breathing problems limit his ability to work because "[a]ny exercise, movement, climbing, [or] walking" causes him to lose his breath.  T. 46.  He experiences shortness of breath when he walks, does "movements," and while he sleeps.  Id. at 48.  He stated that he cannot sleep through the night because of coughing and wheezing fits, and only sleeps about six hours each night.  Id.  He can walk for about ten or fifteen minutes before losing his breath.  Id. at 46-47.  He can stand in one place for fifteen or twenty minutes, and sit for fifteen or twenty minutes at a time.  Id. at 47-48.  Gemmell can also bend, stoop, and squat.  Id. at 47.  He has normal use of his hands and can lift about fifty pounds.  Id. at 48.  He is not in pain and has no other limitations besides his breathing difficulties.  Id. at 46.  At the time of the hearing, Gemmell testified that he was using two inhalers, one of which was a rescue inhaler.  Id.  The other inhaler had been recently prescribed to him, but his insurance did not cover it.  Id.  He previously used an oxygen tank at home, but stopped in June 2012 when he moved and had to return the tanks.  Id. at 46-

---

[3]  This section is taken from Gemmell's self-reporting of his activities of daily living and does not amount to findings of fact by this Court.

47.  At the time of the hearing, he did not have a current prescription for oxygen tanks.  Id. at 47.

Gemmell is able to tend to his own personal hygiene, including bathing, combing his hair, and dressing himself.  T. 49.  He cooks for himself occasionally when his wife is not home.  Id.  He does not do many chores around the house, but does do laundry at home about once per week.  Id.  He does not grocery shop, and stated that his twenty-one-year-old son tends to the gardening and housekeeping outside of the house.  Id. at 49-50.  He used to enjoy hunting and fishing but stopped participating in those hobbies in 2006 or 2007.  Id. at 50.  He is not a member of any community group or other organization.  Id.

### 2.  Ticonderoga Health Center

Gemmell's treatment notes from Ticonderoga Health Center begin on January 14, 2000 and end on March 10, 2008.  T. 239, 258.  Gemmell's early treatment notes indicate that he attempted to quit smoking on multiple occasions.  See id. at 255 (progress note dated Nov. 28, 2003, stating that Gemmell has decreased his smoking to one pack per day); id. at 243 (Aug. 18, 2006 visit discussing, in part, smoking cessation); id. at 242 (Oct. 11, 2006 visit discussing smoking cessation options).  Gemmell received treatment for groin pain on December 23, 2004.  Id. at 246.  He also received treatment at Ticonderoga Health Center for injuries sustained on the job on October 23, 2007.  Id. at 240.  He also received treatment for lower back pain on March 5, 2007, and for a plantar wart in August and September 2005, and August 2006.  Id. at 243-45.

### 3. Berkshire Medical Center

On June 25, 2009, Dr. Daniel M. Doyle, M.D. evaluated Gemmell for complaints of dyspnea;[4] chest discomfort; and abnormal imaging studies, subsequent to Gemmell's emergency room visit two days prior.  T. 303.  Dr. Doyle noted that Gemmell had a significant smoking history of smoking two packs of cigarettes per day for twenty years.  Id. Dr. Doyle also noted that Gemmell had been seen at the Berkshire Medical emergency room ("ER") in May 2009, where a CT scan of his chest revealed bilateral hilar and mediastinal adenopathy,[5] and interstitial lung "filtrates."[6]  Id.  Gemmell received antibiotics at the emergency room, but his condition did not improve.  Id.  He received an Advair inhaler on May 12, 2009, but his condition still did not improve.  Id.  Dr. Doyle noted that Gemmell has "significant exertional dyspnea," becomes breathless after walking fifty feet, and gets tired when he lifts heavy objects.  Id.  Despite these complaints, Dr. Doyle noted that Gemmell continued to work.  Id.  Gemmell had reported that his dyspnea was completely resolved on May 28, 2009, but a subsequent CT scan showed no significant changes.  Id. At the time of Dr. Doyle's examination, Gemmell reported some wheezing.  Id.  Dr. Doyle suspected that Gemmell may suffer from sarcoidosis or hypersensitivity pneumonitis.  Id. at 304.

---

[4]  "Dyspnea is unpleasant or uncomfortable breathing.  It is experienced and described differently by patients depending on cause."  THE MERCK MANUAL 1834 (Robert S. Porter, M.D. & Justin L. Kaplan, M.D. eds., 19th ed. 2011).

[5]  "Adenopathy" is any disease or enlargement involving glandular tissues.  MEDLINEPLUS MEDICAL DICTIONARY, http://www.merriam-webster.com/medlineplus/adenopathy (last visited Sept. 21, 2015).

[6]  The Court assumes that this note refers to "infiltrates," which are "materials that penetrate the interstices of a tissue or substance."  Jeffcoat v. Astrue, No. 09-CV-5276 (KAM), 2010 WL 3154344, at *3 n.10 (E.D.N.Y. Aug. 6, 2010) (internal quotation marks omitted).

On July 6, 2009, Gemmell underwent a pulmonary function test.  T. 269.  Dr. Boris A. Murillo, M.D. found that Gemmell's FVC and FEV1 levels[7] were mildly reduced, and the FEV1/FVC ratio was normal.  Id.  Dr. Murillo opined that Gemmell had "a mild ventilatory defect on a restrictive basis" but did not identify the specific defect causing Gemmell's breathing issues.  Id.  Two days later, Gemmell visited Dr. Murillo again, complaining of shortness of breath.  Id. at 273.  Dr. Murillo noted that "by spirometry alone, total lung capacity was normal."  Id.  Dr. Murillo further opined that Gemmell had "a significant history of interstitial lung disease with evidence of gas exchange impairment," and that he likely suffers from either asthma or chronic obstructive pulmonary disease ("COPD").  Id.

Gemmell saw Dr. Murillo again on July 28, 2009, complaining of shortness of breath with any amount of activity, and difficulty breathing after walking approximately fifty steps.  T. 267.  Dr. Murillo noted that Gemmell was trying to quit smoking, but was currently smoking approximately two packs of cigarettes per day.  Id.  Dr. Murillo opined that Gemmell suffered from exertional dyspnea and pleuritic chest pain.  Id. at 268.  Dr. Murillo also noted that Gemmell's CT scan exhibited interstitial changes, and hilar and mediastinal adenopathy.  Id.  He suggested that Gemmell undergo a VATS[8] procedure so that additional lung tissue could be obtained.  Id.

Gemmell underwent a VATS procedure, performed by Dr. Michael R. DiSiena, D.O., on August 4, 2009.  T. 264.  Results from the procedure and subsequent testing indicated

---

[7]  "FVC" is forced vital capacity, and "FEV1" is one-second forced expiratory volume.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00(E).

[8]  "VATS" is video-assisted thoracoscopic surgery.  THE MERCK MANUAL at 1865.

-6-

that Gemmell suffered from desquamative interstitial pneumonitis ("DIP")[9] and respiratory bronchiolitis with interstitial lung disease. Id. at 265. Gemmell saw Dr. Murillo again on August 18, 2009. Id. at 410. Dr. Murillo noted Gemmell's previous diagnosis of interstitial lung disease, and that Gemmell's biopsy from the VATS procedure indicated DIP. Id. Dr. Murillo also noted that Gemmell had mediastinal adenopathy, obstructive lung disease, COPD with question of bronchial hyperresponsiveness, and a vocal chord abnormality that would need a biopsy. Id. Dr. Murillo advised Gemmell to return for a follow-up appointment, but the records indicate that August 18, 2009 was the last time Gemmell received treatment at Berkshire Medical Center. See id.

### 4. Fletcher Allen Health Care

Gemmell first received treatment at Fletcher Allen Health Care on August 18, 2011. T. 441-42. On that date, Gemmell underwent pulmonary function testing that showed normal oxygen saturation on room air at rest, and significant desaturation with exercise. Id. at 439-40. Gemmell's oxygen saturation improved on 3 LPM supplemental oxygen and a reduced walk distance of 400 feet. Id. at 440. Dr. Charlotte C. Teneback, M.D. interpreted the pulmonary function test findings and found that there were no significant changes as compared to spirometry testing performed in 2009. Id. at 442. Dr. Teneback noted that Gemmell had not received any pulmonary care since the summer of 2009. Id. at 441. Gemmell reported that he did not notice any change in his symptoms since that time. Id.

---

[9]  Desquamative interstitial pneumonia is "chronic lung inflammation characterized by mononuclear cell infiltration of the airspaces; it occurs almost exclusively in current or former cigarette smokers." THE MERCK MANUAL at 1951.

Additionally, Gemmell reported that he coughed frequently, especially in the morning, wheezed exertionally and at night when he lay down, and experienced shortness of breath upon exertion.  Id.  Gemmell also reported using Advair twice per day and Albuterol four times per day, although he stated that the medications did not improve his symptoms.  Id.  Dr. Teneback found that Gemmell suffered from the following symptoms: snoring; cough; shortness of breath; wheezing; and heartburn.  Id.  Gemmell was not working at the time, and stated that he did not feel that he could work.  Id.  Dr. Teneback concluded that Gemmell suffered from exertional shortness of breath and continued tobacco abuse.  Id. at 442.  She also found that Gemmell's lung biopsy and pathology report were consistent with DIP and COPD.  Id.  Dr. Teneback discussed with Gemmell the importance of smoking cessation.  Id.

On December 6, 2011, Gemmell saw Dr. Richard McKeever, M.D. for a follow-up appointment.  T. 561.  He reported that he had received oxygen from the pulmonologist and was using three liters of oxygen with activity and at night, but was still experiencing shortness of breath with the oxygen.  Id.  Dr. McKeever found that Gemmell's interstitial emphysema was stable from a respiratory standpoint, and that he was no longer smoking.  Id. at 562.

Gemmell next saw Dr. McKeever on September 11, 2012, and reported that he had stopped using his inhalers, and continued to experience shortness of breath.  T. 560.  His breathing ability deteriorated after he stopped using the inhalers.  Id.  Gemmell had also resumed smoking approximately two packs of cigarettes per day.  Id.  Dr. McKeever referred Gemmell to a pulmonologist.  Id.  Dr. McKeever examined Gemmell again on October 30, 2012.  Id. at 556.  Gemmell reported that he experienced dyspnea, shortness

of breath, and wheezing when moving, but not when sitting.  Id. at 557.  He also reported

clear sputum production in the mornings.  Id.  Dr. McKeever noted "no dyspnea" and "no

wheezing" upon physical examination.  Id.  However, upon assessment, Dr. McKeever

noted that Gemmell was still experiencing "significant dyspnea," and that he would prescribe

him Symbicort because his insurance did not cover Advair.  Id. at 558.

Gemmell visited Dr. McKeever for another follow-up appointment on January 22,

2013 to review his COPD and obtain a referral to a pulmonologist.  T. 552.  Gemmell again

reported dyspnea and shortness of breath with activity, and sometimes while at rest.  Id. at

554.  He also reported sputum production and wheezing.  Id.  Dr. McKeever's physical

examination revealed no dyspnea and no wheezing, but did exhibit decreased breathing

sounds.  Id.  Under Dr. McKeever's "assessment" section, he noted that Gemmell was using

Pro-Air seven or eight times per day, and Symbicort twice per day.  Id. at 555.  Gemmell

had decreased his smoking to only a couple of cigarettes per day.  Id.  He also noted that

Gemmell was still "very dyspneic with any activity."  Id.  He provided Gemmell with a

pulmonologist referral.  Id.

On March 11, 2013, Gemmell visited Dr. McKeever again and reported dyspnea,

shortness of breath, sputum production, and wheezing.  T. 551.  Gemmell stated that his

symptoms did not improve with a higher dose of Symbicort.  Id.


### 5.  Erik P. Purins, M.D., Consultative Examiner

Dr. Purins completed a Physical Residual Functional Capacity ("RFC") Assessment

on October 5, 2009.  T. 421-28.  As to exertional limitations, Dr. Purins opined that Gemmell

could lift and/or carry ten pounds occassionally; lift and/or carry less than ten pounds

frequently; stand and/or walk (with normal breaks) for at least two hours in an eight-hour workday; sit (with normal breaks) for about six hours in an eight-hour workday; and push and/or pull (including operation of hand and/or foot controls) for an unlimited amount of time, subject to the above lift and/or carry restrictions.  Id. at 422.  In support of his conclusions, Dr. Purins noted that chest CT and biopsy results from Dr. Doyle were consistent with sarcoidosis, pending a definitive diagnosis.  Id.  He also noted that Gemmell's exams and PFTs[10] were consistent with "DOExertion."[11]  Dr. Purins also noted that Gemmell was receiving oxygen supplementation, pending a definitive prescription and that his condition was expected to improve.  Id.  As to postural limitations, Dr. Purins opined that Gemmell could occasionally climb ramps and stairs; stoop; kneel; crouch; and crawl, but that he could never climb a ladder, rope or scaffolds.  Id. at 423.  As to environmental limitations, Dr. Purins opined that Gemmell must avoid concentrated exposure to extreme cold; extreme heat; humidity; and hazards (machinery, heights, etc.).  Id. at 425.  Dr. Purins further opined that Gemmell must avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc.  Id.  Dr. Purins also noted that there was no Medical Source Statement ("MSS") in Gemmell's file.  Id. at 427.

### 6.  Judy Panek, M.D., State Agency Medical Consultant

Dr. Judy Panek, M.D., a State agency medical consultant, completed a Physical RFC

---

[10]  PFT is an abbreviation for pulmonary function test.  MEDILEXICON, http://www.medilexicon.com/medicaldictionary.php?s=Pulmonary+Function+Test (last visited Sept. 16, 2015).

[11]  DOE is an abbreviation for dyspnea on exertion.  MEDILEXICON, http://www.medilexicon.com/medicalabbreviations.php?keywords=DOE&search=abbreviation&channel=7201 801445 (last visited Sept. 16, 2015).

Assessment on May 4, 2012. T. 488-93. As to exertional limitations, Dr. Panek opined to the exact same limitations that Dr. Purins set forth in his physical RFC assessment of Gemmell. See id. at 489. Dr. Panek noted the evidence supporting these limitations included an August 2011 office visit where Gemmell was found to have shortness of breath and interstitial lung disease. Id. Dr. Panek also noted that Gemmell's oxygen saturation was 97% at room air, and his lungs demonstrated inspiratory and expiratory wheezing. Id. Dr. Panek also relied on a "Pulm Walk Test," performed in August 2011, which revealed that Gemmell had normal oxygen saturation on room air at rest, and significant desaturation with exercise, and that his oxygen improved on 3 LPM supplemental oxygen and a reduced walk distance of 400 feet. Id. As to postural limitations, Dr. Panek found that Gemmell could occasionally climb ramps, stairs, ladders, ropes, and scaffolds; balance; stoop; kneel; crouch; and crawl. Id. at 490. The only environmental limitation that Dr. Panek found was that Gemmell should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. Id. at 491. As to Gemmell's reported symptoms, Dr. Panek determined that, based on the evidence, Gemmell's reported difficulty with lifting, standing, walking and climbing due to his shortness of breath was credible. Id. Dr. Panek also noted that there was no treating source statement in Gemmell's file. Id. at 492.

## II. Discussion

### A. Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the

decision.  Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is

"'more than a mere scintilla,'" meaning that in the record one can find "'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"

Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402

U.S. 389, 401 (1971) (internal quotation marks omitted)).

    "In addition, an ALJ must set forth the crucial factors justifying his findings with

sufficient specificity to allow a court to determine whether substantial evidence supports the

decision." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing

Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  However, a court cannot substitute

its interpretation of the administrative record for that of the Commissioner if the record

contains substantial support for the ALJ's decision.  Yancey v. Apfel, 145 F.3d 106, 111 (2d

Cir. 1998).  If the Commissioner's finding is supported by substantial evidence, it is

conclusive.  42 U.S.C. § 405(g); see Halloran, 362 F.3d at 31.


### B.  Determination of Disability

    "Every individual who is under a disability. . . shall be entitled to a disability. . . benefit

. . . ." 42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for a continuous period of not

less than 12 months."  Id. § 423(d)(1)(A).  A medically-determinable impairment is an

affliction that is so severe that it renders an individual unable to continue with his or her

previous work or any other employment that may be available to him or her based upon

age, education, and work experience.  Id. § 423(d)(2)(A).  Such an impairment must be

supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. §

423(d)(3). Additionally, the severity of the impairment is "based [upon] objective medical

facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain

or disability, and educational background, age, and work experience." Ventura v. Barnhart,

No. 04 Civ. 9018(NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v.

Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)) (additional citation omitted).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to

determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity. If he [or she] is
> not, the [Commissioner] next considers whether the claimant has
> a "severe impairment" which significantly limits his [or her]
> physical or mental ability to do basic work activities. If the
> claimant suffers such an impairment, the third inquiry is whether,
> based solely on medical evidence, the claimant has an
> impairment which is listed in Appendix 1 of the regulations. If the
> claimant has such an impairment, the [Commissioner] will
> consider him [or her] disabled without considering vocational
> factors such as age, education, and work experience; the
> [Commissioner] presumes that a claimant who is afflicted with a
> "listed" impairment is unable to perform substantial gainful
> activity. Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the claimant's
> severe impairment, he [or she] has the residual functional
> capacity to perform his [or her] past work. Finally, if the claimant
> is unable to perform his [or her] past work, the [Commissioner]
> then determines whether there is other work which the claimant
> could perform.

Berry, 675 F.2d at 467. The plaintiff bears the initial burden of proof to establish each of the

first four steps. DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry,

675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the

Commissioner to prove that the plaintiff is still able to engage in gainful employment

somewhere.  Id. at 1180 (citing Berry, 675 F.2d at 467).

### C. ALJ Black-Pennington's Findings

Gemmell, appearing pro se, testified at the hearing held on February 4, 2013.  T. 30-57.  Using the five-step sequential evaluation, the ALJ found that Gemmell (1) had not engaged in substantial gainful activity since August 3, 2009, the alleged onset date; (2) had the following severe medically-determinable impairments: COPD, interstitial emphysema, and obesity; (3) did not have an impairment, alone or in combination, sufficient to meet the listed impairments in Appendix 1, Subpart P of Social Security Regulation Part 404; (4) maintained

> the residual functional capacity [("RFC")] to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except that the claimant can lift/carry ten pounds occasionally and less than ten pounds frequently; he can occasionally climb ramps or stairs, balance, stoop, kneel, or crouch; he is precluded from climbing ladders, ropes or scaffolds; he must avoid concentrated exposure to respiratory irritants such as fumes, odors, dust, gases, or poor ventilation;

and, thus; (5) given his age, education, work experience, and RFC, was capable of engaging in employment which exists in significant numbers in the national economy.  Id. at 20-25.  Therefore, the ALJ determined that Gemmell was not disabled.  Id. at 25.

### D.  Gemmell's Contentions

Gemmell contends that: (1) the ALJ failed to fulfill her duty to fully develop the record in light of Gemmell's pro se status; (2) the ALJ erred by not crediting Gemmell's testimony; (3) the ALJ erred by giving too much weight to the opinions of non-examining physicians;

-14-

and (4) the Commissioner failed to meet her burden at Step Five of the sequential analysis.

Dkt. No. 10 at 10-23.

## 1. RFC

The ALJ determined that Gemmell retained the RFC:

> to perform sedentary work as defined in 20 C.F.R. § 404.1567(a)
> except that the claimant can lift/carry ten pounds occasionally
> and less than ten pounds frequently; he can occasionally climb
> ramps or stairs, balance, stoop, kneel, or crouch; he is precluded
> from climbing ladders, ropes or scaffolds; he must avoid
> concentrated exposure to respiratory irritants such as fumes,
> odors, dust, gases, or poor ventilation;

T. 21. In reaching this assessment, the ALJ discussed the notes and opinions of Drs. Erik

Purins, M.D.; Judy Panek, M.D.; and Richard McKeever, M.D. Id. at 21-23.

RFC describes what a claimant is capable of doing despite his or her impairments

considering all relevant evidence, which consists of physical limitations, symptoms, and

other limitations beyond the symptoms. Martone v. Apfel, 70 F. Supp. 2d 145,150

(N.D.N.Y. 1999); 20 C.F.R. §§ 404.1545, 416.945. "In assessing RFC, the ALJ's findings

must specify the functions plaintiff is capable of performing; conclusory statements

regarding plaintiff's capacities are not sufficient." Martone, 70 F. Supp. 2d at 150 (citations

omitted). RFC is then used to determine whether the claimant can perform his or her past

relevant work in the national economy. New York v. Sullivan, 906 F.2d 910, 913 (2d Cir.

1990); 20 C.F.R. §§ 404.1545, 416.960. The Second Circuit has clarified that, in step five

of the Commissioner's analysis, once RFC has been determined, "the Commissioner need

only show that there is work in the national economy that the claimant can do; he need not

provide additional evidence of the claimant's [RFC]." Poupore v. Astrue, 566 F.3d 303, 306

(2d Cir. 2009).

### a. Weight to Give Treating Physician/Failure to Develop Record

Gemmell contends that the ALJ failed to fully develop the record where she failed to: (1) adequately advise Gemmell of the assistance that a lawyer could provide; (2) obtain a treating physician's opinion of his limitations; and (3) investigate whether he suffered from a learning disability. Dkt. No. 10 at 10-12. Gemmell also contends that the ALJ erred by assigning "too much weight" to non-examining medical sources. Id. at 21-23.

A treating physician's opinion on the nature and severity of a claimant's impairments will be given controlling weight when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2); Halloran, 362 F.3d at 32. "Although the treating physician rule need not be applied if the treating physician's opinion is inconsistent with opinions of other medical records, 'not all expert opinions rise to the level of evidence that is sufficiently substantial to undermine the opinion of the treating physician.'" Flagg v. Astrue, No. 11-CV-00458 (LEK), 2012 WL 3886202, at *10 (N.D.N.Y. Sept. 6, 2012) (quoting Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008)). If substantial evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and "the less consistent the opinion is with the record as a whole, the less weight it will be given." Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) (citation omitted). Moreover, as the ultimate conclusion whether a claimant is disabled and cannot work is reserved to the Commissioner (20 § C.F.R. 404.1527(e)(1)), "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." Snell, 177 F.3d at

133.

Should the ALJ decline to give controlling weight to a treating physician, he or she "must still consider various 'factors' in deciding how much weight to give the opinion." Petrie v. Astrue, 412 F. App'x 401 (2d. Cir. 2011). The ALJ considers: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998); see 20 CFR § 404.1527(c)(2). Where the ALJ rejects the treating physician's opinions or otherwise determines that they are not controlling, she must set forth her reasoning with specificity. 20 C.F.R. §§ 404.1527(c)(2); see, e.g., Doyle v. Apfel, 105 F.Supp.2d 115, 119 (E.D.N.Y. 2000). An ALJ's "[f]ailure to provide [explicit] good reasons for not crediting a treating source's opinion is ground for remand." McClaney v. Astrue, No. 10-CV-5421 (JG)(JO), 2012 WL 3777413, at *16 (E.D.N.Y. Aug. 10, 2012) (quoting Snell, 177 F.3d at 134). However, "where the evidence of record permits [the court] to glean the rationale of an ALJ's decision," the ALJ need not "have mentioned every item of testimony presented to him [or her] or have explained why he [or she] considered particular evidence unpersuasive or insufficient to lead him [or her] to a conclusion of disability." Petrie, 412 F. App'x at 407. Ultimately, the final determination of disability and a claimant's ability to work rests with the Commissioner. Id. at 133-34; see 20 C.F.R. § 404.1527(e) (2005).

The treating physician's rule goes "hand in hand" with the ALJ's duty to develop the record. Batista v. Barnhart, 326 F. Supp. 2d 345, 353 (E.D.N.Y. 2004). It is well settled that an ALJ has an affirmative duty to develop the administrative record during Social Security

hearings, even where the claimant is represented by counsel.  See 20 C.F.R. § 404.1512(e)

(explaining that the Commissioner will attempt to retrieve the entire medical history from the

claimant's treating sources rather than always seek consultative examinations); Perez v.

Chater, 77 F.3d 41, 47 (2d Cir. 1996) (citations omitted); see also 20 C.F.R. § 404.1512(d)

(describing Commissioner's duty to develop a "complete medical history for at least the

[twelve] months preceding the month in which [claimant] file[s an] application . . . ."); Clark v.

Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) ("[T]he lack of specific clinical

findings in the treating physician's report [does] not, standing by itself, justify the ALJ's

failure to credit the physician's opinion . . . . [E]ven if the clinical findings were inadequate, it

[i]s the ALJ's duty to seek additional information from [the treating physcian] sua sponte.")

(internal citation omitted).   Accordingly, "[t]he ALJ's duty to supplement a claimant's record

is triggered by ambiguous evidence, the ALJ's finding that the record is inadequate or the

ALJ's reliance on an expert's conclusion that the evidence is ambiguous." Shrock v. Colvin,

12-CV-1898 (MAD/CFH), 2014 WL 2779024, at *9 (quoting Webb v. Barnhart, 433 F.3d

683, 687 (9th Cir. 2005) (citation omitted); Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir.

1999) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ

already possesses a 'complete medical history,' the ALJ is under no obligation to seek

additional information in advance of rejecting a benefits claim.") (citations omitted)); see

also Roat v. Barnhart, 717 F. Supp. 2d 241, 264 (N.D.N.Y. 2010) (stating that where a

"'medical record paints an incomplete picture of [the claimant's] overall health during the

relevant period, [as] it includes evidence of the problems . . . the ALJ had an affirmative

duty to supplement [the] medical record, to the extent it was incomplete, before rejecting

[the claimant's] petition . . . .'") (quoting Webb, 433 F.3d at 687).

Here, the ALJ stated that she gave "great weight" to the opinions of Drs. Purins and Panek because their opinions were supported by the record and by Gemmell's own statements submitted in his Adult Function Report. T. 23. The ALJ also stated that "the treatment records of Dr. McKeever are also consistent with a finding that the claimant can perform a range of sedentary work with restrictions. . ." Id.

In this case, the ALJ explicitly stated the weight she afforded to the opinions of Drs. Purins and Panek, consultative examiners, but failed to explicitly state the weight afforded to the opinion of Dr. McKeever, Gemmell's treating physician. T. 23. Although the ALJ stated that McKeever's findings were "consistent with" her RFC assessment, the ALJ failed to explicitly state whether she afforded controlling weight to McKeever's opinion. See id. The ALJ also failed to apply the factors enumerated in the regulations to determine how much weight to afford to Dr. McKeever's opinion, if the weight afforded was not controlling. See id. The Second Circuit has stated that it does "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and [it] will continue remanding when [it] encounter[s] opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ's failure to set forth the weight given to Dr. McKeever's opinion constitutes reversible error.

Furthermore, the ALJ's conclusory statement that Gemmell's treatment records from Dr. McKeever are consistent with the RFC finding is not supported by substantial evidence. First, the ALJ relies primarily on the opinions of Drs. Purins and Panek. T. 23. However, Dr. Purins' RFC assessment was completed on October 5, 2009, nearly two years before Gemmell began seeing Dr. McKeever at Berkshire Medical Center. Id. at 421-28. The ALJ

-19-

made no attempt to assess whether Gemmell's condition had deteriorated in those two years. See Balodis v. Leavitt, 704 F. Supp. 2d 255, 266 (E.D.N.Y. 2010) (finding error where the ALJ relied upon a consultative examination performed one year prior to treating source's examinations). Dr. Panek's report was signed on May 4, 2012, and stated many of the same limitations as Dr. Purins' report, which the ALJ largely relied upon. T. 23, 488-93. However, when Gemmell visited Dr. McKeever on January 22, 2013, he reported, for the first time, that he was experiencing dyspnea and shortness of breath at rest. Id. at 554. Dr. McKeever noted that Gemmell remained "very dyspneic with activity" and increased his dose of Symbicort. Id. at 555. Gemmell further reported to Dr. McKeever dyspnea and shortness of breath at rest on March 11, 2013. Id. at 551. Such evidence suggests that Gemmell's condition deteriorated in the time between the RFC assessments conducted by Drs. Purins and Panek, and Gemmell's most recent visits with Dr. McKeever. As such, the ALJ was under a duty to investigate the possible deterioration of Gemmell's condition. See Balodis, 704 F. Supp. 2d at 267 (finding error where the ALJ failed to analyze "whether plaintiff's condition deteriorated in the substantial time period between doctors' opinions[.]"). Additionally, although the ALJ relied upon Gemmell's statement in his Adult Function Report, dated December 28, 2011, that "sedentary activities are not affected by [his] condition," Gemmell also stated in that report that "[his] breathing in general has become more difficult in the last [twelve] months." T. 176, 180.

The ALJ further erred where she did not seek to obtain an MSS from Dr. McKeever, and did not apprise Gemmell of the importance of an MSS from a treating physician. "The caselaw in this Circuit is clear as courts have consistently held that if the record does not contain any [MSS] or RFC Assessment from the plaintiff's treating physician, the ALJ has a

-20-

duty to contact plaintiff's treating physician in an attempt to obtain an assessment." <u>Funk v.</u> <u>Astrue</u>, No. 1:10-CV-602 (MAD), 2012 WL 501017, at *4 (N.D.N.Y. Feb. 15, 2012) (citing <u>Pitcher v. Barnhart</u>, No. 5:06-CV-1395 (LEK/VEB), 2009 WL 890671, at *14 (N.D.N.Y. Mar. 30, 2009)) (additional citations omitted). Here, the record does not show that the ALJ attempted to obtain an RFC assessment from Dr. McKeever, nor does it show that she advised Gemmell of the importance of obtaining such an assessment. Gemmell, who appeared <u>pro se</u> at the hearing, "at the very least" should have been encouraged to contact Dr. McKeever and obtain an RFC assessment from him. <u>Id.</u> at *6.

Therefore, the ALJ failed to adequately develop the record by failing to seek an MSS from Dr. McKeever. The ALJ further erred by failing to explain the weight afforded to Dr. McKeever's opinion. Accordingly, this matter must be remanded, and the ALJ is directed to obtain an MSS from Dr. McKeever to determine, and explain with sufficient detail, the weight to be afforded to Dr. McKeever's opinion.


### i. Gemmell's Alleged Learning Disability

Gemmell alleges that the ALJ erred by failing to obtain his education records, and failing to ask follow-up questions regarding his ability to read, write, and solve basic mathematical problems. Dkt. No. 10 at 12.

An ALJ is obligated to seek out further information where there are contradictions or inconsistencies, or obvious gaps in the administrative record. <u>Snyder v. Colvin</u>, No. 13-CV-6644T, 2015 WL 3407956, at *5 (W.D.N.Y. May 27, 2015) (citing <u>Rosa v. Callahan</u>, 168 F.3d 72, 79 (2d Cir. 1999)). However, the Commissioner need not develop the record in areas where there is no credible medical or other evidence. <u>Youney v. Barnhart</u>, 280 F.

Supp. 2d 52, 62 (W.D.N.Y. 2003) (citing Schaal, 134 F.3d at 505 (2d Cir. 1998)).

Here, Gemmell testified that he could read and write.  T. 44.  Although he stated that he could not perform any "higher math" skills, he stated that he could perform "basic everyday" math.  Id.  Further, although Gemmell's brief in support of his motion states that he was in special education classes, Dkt. No. 10 at 12, Gemmell answered "no" when asked on his Disability Report whether he attended special education classes.  T. 148.  In light of this evidence, the Court finds no basis to remand for further development of the record as to Gemmell's alleged learning disability.  See Snyder, 2015 WL 3407956, at *6 (finding no basis to remand for further testing where the only references to the plaintiff's learning disability were his own statements that he graduated with an "IEP" and that he was in special education classes due to emotional problems); Youney, 280 F. Supp. 2d at 62. (finding no basis to remand for further testing as to the plaintiff's alleged mental disability where the plaintiff stated that her concentration was "not like it used to be" and that she was taking medication for depression).

Accordingly, Gemmell's request to remand on this issue is denied.


### b.  Gemmell's Credibility

Gemmell argues that the ALJ erred by not crediting his testimony.  Dkt. No. 10 at 16-21.  Because the Court concludes that the ALJ did not fully develop the record, and failed to properly apply the treating physician rule, the Court need not address this contention, as the credibility determination may change on remand.  However, to the extent that the ALJ, on remand, reassesses the evidence, after requesting an MSS from Dr. McKeever and applying the treating physician rule, the ALJ should consider whether the reevaluation

necessitates a new credibility determination in light of the evidence as a whole.

However, the Court does find that it can address one clear error in the ALJ's credibility assessment. The ALJ erred where she stated that Gemmell's activities of daily living are inconsistent with a finding of total disability. The ALJ relied upon statements that Gemmell reported to the SSA on December 28, 2011. T. 22, 170-80. In relying on these statements, the ALJ stated that Gemmell could "perform light housework" and "go shopping." Id. at 22. At the hearing on February 4, 2013, Gemmell testified that he does not go grocery shopping and does not perform any chores around the house. Id. at 49-50. Moreover, a claimant may still be found disabled even if he or she testifies that they can perform some activities of daily living. See McGregor v. Astrue, 993 F. Supp. 2d 130, 142 (N.D.N.Y. 2010). On remand, the ALJ should reassess Gemmell's credibility in light of the possible deterioration of his condition. See Loren v. Astrue, 553 F. Supp. 2d 281, 290-91 (W.D.N.Y. 2008) (finding that the ALJ erred, in part, by failing to question the plaintiff regarding perceived inconsistencies in her statements).

### c. Vocational Expert Testimony

Gemmell contends that the ALJ's hypothetical questions posed to the vocational expert were flawed because they lacked any limitation regarding Gemmell's alleged learning disability. Dkt. No. 10 at 13. As stated previously, there is no evidence in the record showing that Gemmell suffers from a learning disability or suggesting that the ALJ had a duty to further investigate this alleged condition. As such, the Court finds that the ALJ did not err in declining to include a learning disability limitation in the hypothetical questions posed to the vocational expert.

Gemmell also contends that the ALJ used the incorrect occupational title to identify and assess his previous job.  Dkt. No. 10 at 14.  The Commissioner is correct that the alleged misidentification of Gemmell's previous work is irrelevant.  <u>See</u> Dkt. No. 11 at 18. The ALJ found that Gemmell was unable to perform his past relevant work, and that transferability of job skills was irrelevant to the disability determination.  T. 23-24. Therefore, any misidentification of Gemmell's previous job is harmless error.

Lastly, Gemmell contends that there is no evidence in the record supporting the conclusion that he can perform the jobs identified by the vocational expert.  Dkt. No. 10 at 15.  As the Court is remanding to the ALJ for a new assessment of Gemmell's RFC, the Court need not address this contention.  Upon remand, if determined to be necessary, following consideration of an MSS from Dr. McKeever and an assessment of whether Gemmell's condition deteriorated, the ALJ will present questions to a vocational expert that reflect Gemmell's updated RFC.

### III.  Conclusion

**WHEREFORE, IT IS HEREBY**

**ORDERED**, that defendant's Motion for Judgment on the Pleadings (Dkt. No. 11) is **DENIED**; and it is further,

**ORDERED** that plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 10) is **GRANTED** insofar as the decision of the ALJ is **REVERSED** and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings consistent with the above decision; and it is further

**ORDERED**, that the Clerk of the Court is serve a copy of this Memorandum-Decision and Order on the parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Dated: September 23, 2015
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge